AMERICAN SECURITY BANK,
N.A., Plaintiff,

v.

William A. SULLIVAN, Jr., et
al., Defendants.

Civ. A. No. 85–1043.

United States District Court,
District of Columbia.

March 26, 1987.

Joseph M. Cahill, Judith L. Gelber, Cooter & Gell, Washington, D.C., for plaintiff.

Stephen A. Trimble, Dan Free, Hamilton & Hamilton, Timothy J. Battle, Miles & Stockbridge, Washington, D.C., for defendants Myers Matteo, Rabil, Norcross and Landgraf.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

This is a diversity action to recover money due and owing plaintiff American Security Bank, N.A. (the Bank), under the terms of a promissory note executed by defendant William A. Sullivan, Jr., on behalf of the law firm of Sullivan, Matteo, Rabil & Norcross. Named as defendants, in addition to Sullivan, are Michael D. Matteo, Mitchell J. Rabil, David F. Norcross, Daniel W. Myers, 2d, and James H. Landgraf, who were all partners in the firm at the time the note was executed, and Sullivan's wife, Anne, who along with her husband executed a separate agreement guaranteeing payment of the note. The Sullivans have never disputed their liability on the note or the guaranty agreement and a default judgment has been entered against them. Defendants Matteo, Rabil, Norcross, Myers, and Landgraf, alleging that Sullivan was without authority to execute the note on behalf of the partnership, denied liability to the Bank and cross-claimed

against the Sullivans. The Bank's claim against these defendants came before the Court earlier for a non-jury trial and judgment was thereafter entered in favor of plaintiff. Judgment was also entered in favor of the non-defaulting defendants on their cross-claim against the Sullivans.[1] The following constitutes the Court's findings of fact and conclusions of law with respect to the Bank's claim against the non-defaulting defendants.

## FINDINGS OF FACT

1. On or about September 1, 1983, defendants William A. Sullivan, Jr., Michael D. Matteo, Mitchell J. Rabil, David F. Norcross, Daniel W. Myers, 2d, and James H. Landgraf entered into a partnership agreement creating a firm known as Sullivan, Matteo, Rabil & Norcross (SMR & N) which was to engage in the general practice of law in the District of Columbia. During the period September 1, 1983, through October 30, 1984, these defendants were all general partners in SMR & N. All of the defendants except Sullivan were New Jersey residents.[2] Sullivan lived in Potomac, Maryland, and was to be the sole resident partner in the law firm's office in Washington.

2. One of the New Jersey partners, Michael D. Matteo, negotiated a one-year lease for office space for SMR & N at 1629 K Street, N.W., Suite 605, Washington, D.C. The lease term was for the period commencing July 1, 1984, and ending June 30, 1985. On or about June 26, 1984, Sullivan and each of the New Jersey partners, except Landgraf, executed the lease on behalf of SMR & N.

3. The firm's name was placed on the door of SMR & N's office suite and Sullivan occupied the premises, from which he transacted business for the partnership. Sullivan was authorized to develop business for the firm, to bill clients, to use SMR & N letterhead stationery and business cards, which had been prepared for

his use at the direction of the New Jersey partners, and to generally manage the day-to-day affairs of the office. In addition, law firm announcements for SMR & N and a promotional pamphlet containing resumes of all the partners were printed at the direction of the New Jersey defendants and given to Sullivan for distribution.

4. SMR & N established a bank account at Riggs National Bank in Washington and there was a regular exchange of information between Sullivan and the New Jersey partners as to the status of that account.

5. During July 1984, Sullivan decided, without consulting his partners, to obtain a line of credit in the partnership name from another financial institution in the District. For this purpose, Sullivan contacted J. David Linthicum, an Assistant Vice President and loan officer of plaintiff American Security Bank, who specialized in law firm accounts. On or about July 23, 1984, Mr. Linthicum visited Sullivan at the K Street office suite of SMR & N. Sullivan advised Linthicum that SMR & N wanted to establish a banking relationship in the District other than its existing one with Riggs, and that the firm desired to obtain a line of credit in the amount of $20,000.00 to finance the purchase of office furniture and equipment and to provide operating capital to prevent cash flow problems in meeting the other expenses of the office. Linthicum provided Sullivan with information regarding the Bank's application process and requested various documents and information from Sullivan, including a signed copy of the firm's partnership agreement, that would be needed by the Bank in support of SMR & N's application for the line of credit.

6. On August 3, 1984, Sullivan sent Linthicum a financial statement, market plan, and financial projections for SMR & N. Shortly thereafter, by letter dated August 9, 1984, Richard Starnes, an associate of SMR & N who worked with Sullivan in Washington, sent Linthicum an executed

---

1. The Sullivans failed to respond to the cross-claim and a default was entered against them by the Clerk on October 17, 1985.

2. Defendants Matteo, Rabil, Norcross, Myers, and Landgraf will be hereafter collectively referred to as either the "New Jersey defendants" or the "New Jersey partners".

copy of the firm's lease for the K Street office, additional information concerning SMR & N's accounts receivable, and certain other background information respecting the firm. The August 9 letter from Starnes stated that he was transmitting all of the additional material requested by the Bank "with the sole exception of the partnership agreement, which we should get to you tomorrow morning."

7. The following day, August 10, 1984, Sullivan had an unsigned copy of the partnership agreement and a balance sheet for SMR & N delivered to Linthicum. The copy of the partnership agreement received by the Bank, although unsigned, was otherwise identical in content to the signed partnership agreement of September 1, 1983, which was then in effect.

8. Section 8 of the partnership agreement provided, in pertinent part, that

[n]o partner shall, without the consent of the other partners, make, draw, accept or endorse any bill, exchange, promissory note, or other engagement for the payment of money, guarantee any debt or account on behalf of the partnership or pledge the credit of the firm in any way, *except in the course of the partnership business.* [Emphasis added.]

9. As of Friday, August 10, 1984, Linthicum believed that he had all the documents and information necessary to make a determination with respect to SMR & N's application. Linthicum testified at trial that, although he had requested Sullivan to provide him with an executed copy of the firm's partnership agreement, he did not feel it was necessary to delay processing of the loan until such was received. The Bank thus approved, on August 10, SMR & N's application and agreed to make a $20,000.00 loan to the firm in the form of a line of credit, as had been requested. Linthicum prepared and forwarded to Sullivan for execution the loan documents, which included a promissory note, a security agreement, financing statements, the guaranty agreement, and a partnership borrowing resolution.

10. Based upon the documents and information which had been submitted to the Bank in support of SMR & N's application and upon his July 23, 1984, visit to the firm's K Street office, Linthicum reasonably believed that Sullivan had authority to act for the partnership in establishing the line of credit. It appeared clear to Linthicum that Sullivan was the managing partner of SMR & N's Washington office, that, as such, he was expected to arrange for payment of the overhead expenses of the office, and that he necessarily had authority to obtain the loan for the stated purposes.

11. The following Monday, August 13, 1984, Sullivan executed the note in the partnership name and had it delivered to the Bank. The note provided for an extension of credit in the amount of $20,000.00 with interest calculated at the rate of two percentage points per annum above the Bank's prime rate in effect from time to time. The Bank also received (1) the security agreement executed by Sullivan on behalf of SMR & N, which gave the Bank a first lien on furniture, fixtures, equipment, supplies, and all receivable collateral of the SMR & N office in Washington, (2) the guaranty agreement executed by Sullivan and his wife, and (3) the partnership borrowing resolution, which purported to bear the signatures of Sullivan's New Jersey partners. Following receipt of these documents, the Bank on August 13 opened an account for SMR & N and the funds were made available for the firm's use.

12. The signatures on the partnership borrowing resolution, with the exception of Sullivan's, were forgeries.

13. After the account at American Security Bank was opened for SMR & N, Sullivan told Starnes that it would be his (Sullivan's) "left pocket" and Starnes was instructed by Sullivan to conceal its existence from the New Jersey partners.

14. The New Jersey partners were unaware of the existence of the subject account and of the dealings between Sullivan and American Security Bank until late October 1984. By that time, all of the loan proceeds deposited into the account had been drawn upon by Sullivan. After learning of the transaction, the New Jersey

partners sent a letter to the Bank, which was received on or about October 30, directing the Bank to terminate Sullivan's signature authority on the account and to terminate any other authority of Mr. Sullivan with respect to the partnership. Sullivan was terminated as a partner on October 31, 1984.

15. There was no evidence presented at trial that any of the loan proceeds were used by Sullivan to benefit the partnership.

16. Sullivan failed to make payments to the Bank as required under the terms of the note. On or about November 1, 1984, the note went into default and the Bank sought payment from the New Jersey defendants, who disclaimed liability. Thereafter, on November 21, 1984, the Bank exercised its option to accelerate the balance, which was then $20,000.00 plus interest accrued pursuant to the terms of the note. The New Jersey partners continued to deny any liability to the Bank and have refused to make payment on the note.

## CONCLUSIONS OF LAW

The issue whether the New Jersey partners are liable on the note executed by Sullivan is resolved by the application of section 41–108(a) of the District of Columbia Code to the foregoing facts. That section provides that

> [e]very partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

Section 41–108(a), D.C.Code (1981 Ed.).[3] Under the statute, the authority of a partner to act as an agent for the partnership extends not only to transactions within the scope of the partner's actual authority, but also to those transactions within the *apparent* scope of his authority. *See generally* 60 Am.Jur.2d, *Partnership*, §§ 129–147. It has been noted that the effect of this provision is that the status of a partner, without more, serves as complete authority with respect to any act apparently within the usual course of partnership business. *Id.*, § 131. The only limitation placed on a partner's ability to bind the partnership is where he "in fact [has] no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority." Section 41–108(a), D.C.Code.

▪ Applying section 41–108(a) and established principles of agency law [4] to the facts of this case, the Court concludes that the New Jersey defendants are bound by Sullivan's execution of the note in question. While it is true that Sullivan did not have actual authority to borrow money in the partnership name for his own purposes, he did have apparent authority under all the relevant facts and circumstances to borrow money for the purposes represented to the Bank, and he did, in the language of section 41–108(a), execute the note "for apparently carrying on in the usual way the business of the partnership." As previously noted, the loan was obtained for the stated purpose of financing the purchase of office furniture and equipment for SMR & N and preventing cash flow problems in meeting the firm's other office expenses.

▪ Apparent authority arises and binds a principal when he places an agent in a position which causes a third person to reasonably believe that the principal has consented to the exercise of authority the agent purports to hold. *Management Partnership, Inc. v. Crumlin*, 423 A.2d 939 (D.C.App.1980); *see also* Restatement, Second, Agency § 27. Where a person is appointed to a position such as manager or treasurer, which carries with it generally

---

3. Section 41–108(a) is part of the Uniform Partnership Act, which has been enacted in the District of Columbia and is codified at §§ 41–101 *et seq.*, D.C.Code (1981 ed.).

4. The Uniform Partnership Act specifically provides that the law of agency shall apply under the Act. *See* § 41–103(c), D.C.Code (1981 ed.).

recognized duties, the person appointed has apparent authority, as to those who know of the appointment, to do the things ordinarily entrusted to one occupying such a position, regardless of unknown limitations which may have been imposed upon the particular agent. Restatement, *supra,* at Comment a. Moreover, it is immaterial to the existence of apparent authority that an agent's representations to a third person were not expressly authorized by his principal. *Management Partnership, Inc. v. Crumlin, supra,* at 941.

The New Jersey defendants clothed Sullivan with apparent authority. They entered into a partnership agreement with Sullivan creating SMR & N and making him a general partner of the firm. One of the New Jersey partners, Michael D. Matteo, negotiated the lease for the firm's K Street office suite. The firm's name was displayed on the door and Sullivan occupied the premises as the sole resident partner, with full authority from his New Jersey partners to manage the day-to-day business of that office. The New Jersey partners provided Sullivan with promotional pamphlets containing the resumes of SMR & N's partners, letterhead stationery, business cards, and law firm announcements. In addition, Sullivan was provided with an executed copy of the office lease and a copy of the partnership agreement which, although unsigned, by its express terms gave him authority to borrow money and execute notes on behalf of the partnership "in the course of the partnership business." In short, the New Jersey defendants, by their conduct, surrounded Sullivan with the indicia of authority and held him out to the Bank and others as managing partner of the firm's office in Washington with authority to transact business for the firm. Under these circumstances, it was entirely reasonable for the Bank to believe that Sullivan was responsible for arranging for payment of the firm's office expenses and had authority to borrow money for such purposes.

■ Nor did the Bank have any "knowledge", within the meaning of section 41–108(a), of a lack of authority on the part of Sullivan which would relieve the New Jersey defendants of liability on the note. Section 41–102(a) provides that "[a] person has 'knowledge' of a fact within the meaning of this chapter … when he has actual knowledge thereof, … [or] when he has knowledge of such other facts as in the circumstances show bad faith." The Bank had no actual knowledge of any lack of authority on Sullivan's part to execute the note, nor did it have knowledge of any other facts which demonstrated bad faith on its part in dealing with SMR & N through Sullivan.

■ One final matter remains to be addressed. At trial, the New Jersey defendants introduced evidence indicating that the Bank failed to follow precisely its own internal procedures in processing the loan application. They argued, based on this evidence, that the Bank was negligent in processing the application and that its negligence should relieve them of liability on the note. The Court is of the view that this evidence is immaterial to whether defendants are bound by Sullivan's execution of the note. The issue here is whether Sullivan had apparent authority to execute the note for the partnership. The existence of such authority principally depends not on the conduct of the Bank, but on the conduct of the New Jersey defendants with respect to third parties such as the Bank. The Bank's conduct is relevant only to the extent of determining whether it acted reasonably in believing Sullivan had the authority he purported to hold. For the reasons previously stated, the Court concludes that the Bank did act reasonably in this respect. Finally, it should be noted that the cases relied upon by the New Jersey defendants in support of this argument are inapposite. They involve the authority of agents to act for corporations, not the authority of a general partner to bind his partnership under the provision of the Uniform Partnership Act applicable to this case.

For all the foregoing reasons, the Court concludes that the Bank is entitled to judgment against the New Jersey defendants.

### ORDER and JUDGMENT

Upon consideration of the evidence adduced at trial, and for the reasons stated in the Court's accompanying findings of fact and conclusions of law, the Court concludes

that defendants Michael D. Matteo, Mitchell J. Rabil, Daniel W. Myers, 2d, David F. Norcross, and James W. Landgraf are liable to the plaintiff on the promissory note which forms the basis for count I of the complaint and that defendants William A. Sullivan, Jr., and Anne M. Sullivan are liable to the aforesaid defendants on their cross-claim against the Sullivans. Accordingly, it is this 26th day of March, 1987,

ORDERED and ADJUDGED that judgment be, and hereby is, entered in favor of plaintiff, American Security Bank, N.A., and against defendants Michael D. Matteo, Mitchell J. Rabil, Daniel W. Myers, 2d, David F. Norcross, and James F. Landgraf in the amount of twenty thousand dollars ($20,000.00), plus accrued interest payable under the terms of the note, reasonable attorneys' fees, interest and costs of this action; it is further

ORDERED and ADJUDGED that judgment be, and hereby is, entered in favor of cross-claimants against cross-defendants William A. Sullivan, Jr., and Anne M. Sullivan in the same amount as that entered above in favor of the plaintiff against defendants and cross-claimants.